UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

SURGICORE SURGICAL CENTER, LLC,

                     Plaintiff,                     **MEMORANDUM & ORDER**
                                                   23-CV-7462 (MKB)

        v.

LIBERTY MUTUAL INSURANCE COMPANY,

                     Defendant.

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Surgicore Surgical Center commenced this action on August 4, 2023, in the

Supreme Court of New York, Nassau County, against Defendant Liberty Mutual Insurance

Company.  (Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.)  Defendant

removed the proceeding to the Eastern District of New York on October 5, 2023, based on

diversity jurisdiction under 28 U.S.C. § 1332.  (Notice of Removal, Docket Entry No. 1.)

Plaintiff seeks payment of outstanding medical bills, totaling $786,519.95 plus interest in

addition to costs and disbursements pursuant to New York Workers' Compensation Law

("WCL") § 13-g or, in the alternative, under a quasi-contract theory.  (Compl. ¶¶ 26–40.)

       On January 11, 2024, Defendant moved to dismiss the Complaint for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for

failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and

Plaintiff opposed the motion.[1]  For the reasons set forth below, the Court grants in part and

denies in part Defendant's motion.

---

[1] (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 9; Def.'s Mem. in Supp. of
Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 9-3; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"),

## I.   Background

### a.   Factual background

Plaintiff is a medical care provider located in New Jersey that provides medical treatment to individuals who work in New York.[2]  (Compl. ¶ 8.)  Defendant is an insurance carrier doing business in New York.  (*Id.* ¶ 9.)

Between June of 2007 and December of 2017, twelve individuals entitled to New York workers' compensation benefits "sustained injuries or illness while in the course of their employment" (the "Injured Workers").  (*Id.* ¶¶ 1, 17; Injured Workers Spreadsheet, annexed to Compl. as Ex. 1, Docket Entry No. 1-1.)  Defendant "provided, insured, or administered" insurance policies to the Injured Workers during the relevant time periods.  (Compl. ¶ 18.)  The Injured Workers filed claims seeking coverage under the WCL for their work-related injuries or illnesses, and the New York State Workers' Compensation Board (the "Board") assigned a discrete claim number for each individual's claim.  (*Id.* ¶¶ 19–21; *see also* Injured Workers Spreadsheet.)

Between July of 2017 and February of 2019, Plaintiff provided medical treatment and services to the Injured Workers, totaling $897,322.49.  (Compl. ¶¶ 1–2, 26; *see also* Injured Workers Spreadsheet.)  Plaintiff billed Defendant for the medical treatment and services it provided to the Injured Workers.  (Compl. ¶ 3.)  Defendant "did not issue proper payment, make an objection to payment, or make a reasonable request for additional information within [forty-five] days of the submission of any of the [b]ills."  (*Id.* ¶¶ 4, 28.)  To date, Defendant has paid $110,802.54 toward Plaintiff's total bill, "leaving a balance due of $786,519.95."  (*Id.* ¶ 29.)

---

Docket Entry No. 10-4; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 11.)

[2]  The Court assumes the truth of the factual allegations in the Complaint for the purpose of deciding Defendant's motion.

### b.   The workers' compensation system in New York

The New York State workers' compensation system provides benefits, such as medical care and replacement of lost wages, to workers who are injured in the course of their employment, regardless of fault.  WCL §§ 10(1), 13–14; *see also Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 641 (2d Cir. 2009); *Jensen v. S. Pac. Co.*, 215 N.Y. 514, 524 (1915), *rev'd on other grounds*, 244 U.S. 205 (1917).  The WCL "is remedial in nature and should 'be construed liberally to accomplish [its] economic and humanitarian objects.'"  *Anderson v. City of Yonkers*, 207 N.Y.S.3d 735, 740 (App. Div. 2024) (alteration in original) (quoting *Husted v. Seneca Steel Serv., Inc.*, 41 N.Y.2d 140, 145 (1976)); *see also Wolfe v. Sibley, Lindsay & Curr Co.*, 36 N.Y.2d 505, 508 (1975) ("In light of its beneficial and remedial character the Workmen's Compensation Law should be construed liberally in favor of the employee.").

### i.   Procedure for an injured employee to file a claim and judicial review

An injured employee who seeks workers' compensation benefits must file a claim with the Board or his employer.[3]  WCL § 20; *Liberty Mut. Ins.*, 585 F.3d at 642.  To cover the payment of benefits, employers must obtain and keep in effect workers' compensation insurance unless the employer meets self-insurance requirements.  WCL § 50.  The insurance carrier may dispute the claim submitted by the injured employee.  *Id.* § 25(2)(a); 12 N.Y. Comp. Codes R. & Regs. § 300.22(a).  If disputed, a Workers' Compensation Law Judge ("WCLJ") decides the dispute in the first instance.  *See* WCL § 150; 12 N.Y. Comp. Codes R. & Regs. § 300.1(a)(10).  "A party dissatisfied with the decision of the WCLJ may seek administrative review by a three-member Board panel and, if review is granted and the panel does not make a unanimous decision, review of the full Board is mandated upon request of either party . . . ."  *Liberty Mut. Ins.*, 585 F.3d at 642;

---

[3]  An "[e]mployer" is defined as "a self-insured employer or, if insured, the insurance carrier."  WCL § 13-b(1)(e).

*Robinson v. Sedgwick Claims Mgmt. Serv.*, No. 23-CV-10782, 2024 WL 2784318, at *4 (S.D.N.Y. May 28, 2024) (quoting *NorGuard Ins. Co. v. Lopez*, No. 15-CV-5032, 2017 WL 354209, at *7 (E.D.N.Y. Jan. 24, 2017)). "[I]f the decision is unanimous, any party [may] seek discretionary review by the full Board." *Liberty Mut. Ins.*, 585 F.3d at 642.

The workers' compensation system allows a party to seek judicial review of the Board's administrative decision in the New York State Supreme Court, Appellate Division, Third Department. WCL § 23; *Liberty Mut. Ins.*, 585 F.3d at 642. The New York State Legislature (the "Legislature") designated a single court for appellative review to establish a judicial forum with "specific expertise to deal with the complexity" of the issues presented in workers' compensation cases. *Liberty Mut. Ins.*, 585 F.3d at 639 (quoting *Empire Ins. Co. v. Workers' Comp. Bd.*, 607 N.Y.S.2d 675, 675 (App. Div. 1994)). Further review may be sought in the New York State Court of Appeals. *Id.*

### ii. Procedure for a medical care provider to recover payment

"Generally, a workers' compensation claimant who is injured in New York is entitled to treatment by a physician of his or her choice so long as the physician is licensed to practice in New York and has been authorized by the Board to provide care and treatment to claimants." *Gomez v. Bd. of Managers of Cipriani*, 184 N.Y.S.3d 428, 429 (App. Div. 2023) (quoting *Bowman v. J & J Log & Lumber Corp.*, 758 N.Y.S.2d 852, 853 (App. Div. 2003)). After providing an injured employee with medical care, an authorized medical care provider must provide the insurance carrier with the bills for the medical care provided within 120 days, or, if the medical care was provided prior to January 1, 2020, on or before April 30, 2020, 12 N.Y. Comp. Codes R. & Regs. § 325-1.25(b)(1), while hospitals must submit bills within 120 days from the last day of medical care, *id.* § 325-1.25(b)(2). Within forty-five days after the bill has been provided to the insurance carrier, the insurance carrier "must pay the bill or notify the medical care provider . . . that the bill is not being paid and explain the reasons for non-

4

payment."[4]  WCL § 13-g(1); 12 N.Y. Comp. Codes R. & Regs. § 325-1.25(c).  If the insurance

carrier "fails to make payment or notify the medical care provider . . . within such forty-five day

period that payment is not being made, the medical care provider . . . may notify the [B]oard . . .

that the bill has not been paid and request that the [B]oard make an award for payment of such

bill."  WCL § 13-g(1); *see also* 12 N.Y. Comp. Codes R. & Regs. § 325-1.25(c)(3) ("If the

employer or insurance carrier . . . has not objected . . . to the payment of the bill within 45 days

of submission, it shall be liable for payment of the full amount billed up to the maximum amount

established in the applicable fee schedule.").  To notify the Board, the medical care provider may

file a Request for Decision on Unpaid Bill(s) (the "HP-1 Form"), indicating whether the medical

care provider seeks an administrative award or arbitration.[5]  (HP-1 Forms, annexed to Pl.'s

Opp'n as Ex. 2, Docket Entry No. 10-2); *see also* Request for Decision on Unpaid Medical

Bill(s) (Form HP-1.0), Workers' Comp. Bd., https://www.wcb.ny.gov/content/main/hcpp/

request-assistance-unpaid-medical-bills.jsp (last visited Aug. 15, 2024).

### iii.  The 2019 amendments

In April of 2019, the Legislature amended, among other provisions, WCL § 13-g to

expand the Board's expedited administrative processes and remedies to a broader category of

---

[4]  If the insurance carrier "objects to payment of all or part of the bill for [m]edical [c]are
rendered for reasons concerning its legal liability for payment and/or the Medical Treatment
Guidelines . . . , the objection will be reviewed by the Board."  12 N.Y. Comp. Codes R. & Regs.
§ 325-1.25(f)(1).  After review, the Board will render an "adjudication decision" determining the
issues of "legal liability and/or the Medical Treatment Guidelines objections."  *Id.* § 325-1.25(f),
(f)(1).

[5]  An administrative award is "a remedy for non-payment of bills when no timely
valuation objections are raised," 12 N.Y. Comp. Codes R. & Regs. § 325-1.25(d), in which the
Board's Chair, or his designee, will review the request, determine if the request complies with the
requirements of section 325, and, if so, issue a notice of decision that proposes an administrative
award not in excess of the fee schedule, *id.* § 325-1.25(d)(6).  An arbitration award is "a remedy
for non-payment of bills when timely valuation objections are raised," *id.* § 325-1.25(e), in which
an arbitration committee will review the request and issue a decision, *see id.* § 328.

entities.[6]  WCL § 13-g (effective January 1, 2020); *see, e.g.*, *21st Century Pharm. v. Travelers Indem. Co.*, No. 716328/2021, 2023 N.Y. Misc. LEXIS 21259, at *4 (N.Y. Sup. Ct. Apr. 10, 2023) ("[A]rbitration under Workers' Compensation Law § 13-g was not available to pharmacies until the law was amended effective January 1, 2020 to allow medical care providers or suppliers to seek arbitration.  Prior to the amendment, the statute only applied to hospitals, physicians, and self-employed physical or occupational therapists." (citations omitted)).  WCL § 13-g now provides "medical care provider[s] or supplier[s]," including out-of-state providers,[7] access to the Board's administrative processes, including (1) a process to seek an award for unanswered and undisputed bills, WCL § 13-g(1), (2) an expedited arbitration process to settle a dispute regarding a provided bill, *id.* § 13-g(2); *see also* 12 N.Y. Comp. Codes R. & Regs. § 328, as well as the Board's administrative remedies, including an administrative award, adjudication decision, or an arbitration award, 12 N.Y. Comp. Codes R. & Regs. § 325-1.25(d)–(f).

## II.   Discussion

### a.   Standards of review

#### i.   Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St.*

---

[6]  For example, prior to the 2019 amendment, only a "hospital, physician or self-employed physical or occupational therapist" could request arbitration to determine a disputed value of medical care rendered.  *See* WCL § 13-g (2007).

[7]  Prior to the 2019 amendment, only "physicians licensed to practice medicine in the State of New York to render medical care" could be authorized by the Board's Chair.  *See* WCL § 13-b(1) (2007).

*Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010).  Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) ("[T]he party asserting subject matter jurisdiction must demonstrate its existence by a preponderance of the evidence." (citing *Morrison*, 547 F.3d at 170)); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii.    Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

### b. Retroactivity of the 2019 amendment of WCL § 13-g

Defendant argues that the provision of the 2019 amendment of WCL § 13-g permitting out-of-state medical providers access to the expedited administrative processes and remedies of the Board, is remedial and procedural, does not create a new remedy, and, therefore, applies retroactively. (Def.'s Mem. 6–9.) In support, Defendant argues that "changes in the [WCL] are applied retroactively if they are remedial and/or procedural in nature and do not impair a substantial contractual right." (*Id.* at 7 (citations omitted).) Defendant argues that the 2019 amendment must apply retroactively because it "does not provide a new substantive right" but either clarifies or codifies "a basis for remedy — arbitration before the [Board]." (*Id.* at 8.) In addition, Defendant argues that this is not a "situation where this proceeding was already pending when the statutory change became effective" as Plaintiff commenced the action three years after the effective date of the statute. (*Id.* at 9.)

Plaintiff argues that the 2019 amendment of WCL § 13-g is not retroactive.[8]  (Pl.'s Opp'n 4, 10.)  In support, Plaintiff argues that "[s]ince nothing in that statute permitted retroactive application of the 2019 amendments, the [Board] has no authority to, and therefore declines to, apply them retroactively."  (Compl. ¶ 15.)

"[Legislative] enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988); *see also Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (2023) ("[R]etroactive operation is not favored by the courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." (alteration in original) (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998))); *see also Phillips v. Fashion Inst. of Tech.*, No. 23-375, 2024 WL 1005500, at *1 n.1 (2d Cir. Mar. 8, 2024) (quoting same); *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 258–59 (2d Cir. 2014) (quoting same).

The Supreme Court established a two-step framework for determining retroactivity in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), and New York has adopted this two-step framework, *Regina Metro. Co. v. N.Y.S. Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 365 (2020) (noting that the New York Court of Appeals adopted the *Landgraf* two-step framework). Under the first step, a court looks to whether the Legislature expressly provided that the statute applies retroactively.  *See Landgraf*, 511 U.S. at 269.  If "the statue contains no such express command," a court moves on to the second step, which examines whether the law has a

---

[8]  Plaintiff did not make specific legal arguments regarding the retroactive effect of the 2019 amendment of WCL § 13-g in its opposition, (*see generally* Pl.'s Opp'n), but made these arguments in its Complaint.  The Court will consider the arguments Plaintiff made in its Complaint, but it will not accept the arguments for their truth or accuracy.  (Compl. ¶¶ 13–16); *see, e.g., Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

"retroactive effect."  *Id.* at 280; *Calloway*, 761 F.3d at 259 (noting that it is "fundamental that a

court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (quoting

*Majewski*, 91 N.Y.2d at 583)); *Gottwald*, 40 N.Y.3d at 258 (noting that, when the Legislature does

not "'expressly prescribe[] the statute's proper reach,'" a court must "look to the text of the statute

to determine whether it was intended to have retroactive effect" (alteration in original) (quoting

*Landgraf*, 511 U.S. at 280)).  This analysis requires an assessment of "the nature and extent of the

change in the law and the degree of connection between the operation of the new rule and a

relevant past event," as well as "whether the new provision attaches new legal consequences to

events completed before its enactment."  *Landgraf*, 511 U.S. at 270.  A statute is impermissibly

retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new

obligation, imposes a new duty, or attaches a new disability, in respect to transactions or

considerations already past."  *Id.* (quoting *Soc'y for Propagation of the Gospel v. Wheeler*, 22 F.

Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13,156)); *see also Calloway*, 761 F.3d at 259 n.4 (noting

that a statute is "retroactive if, although it is not directed at conduct that occurred prior to its

enactment, it diminishes rights or increases obligations established prior to the legislation's

effective date" (citing N.Y. Stat. Law § 51)).  However, "a statute that affects only 'the propriety

of prospective relief' or the nonsubstantive provisions governing the procedure for adjudication of

a claim going forward has no potentially problematic retroactive effect even when the liability

arises from past conduct."  *Regina*, 35 N.Y.3d at 365 (quoting *Landgraf*, 511 U.S. at 273); *see also*

N.Y. Stat. Law § 54(a) ("Remedial statutes constitute an exception to the general rule that statutes

are not to be given a retroactive operation, but only to the extent that they do not impair vested

rights."); *id.* § 55(a) ("Generally procedural statutes constitute an exception to the general rule that

statutes will not be retroactively construed, and such statutes will be applied to pending cases

except where their effect is to create a remedy where none previously existed.").

Applying the *Landgraf* framework, as to the first step — whether the statute specifically provides for retroactivity — the revised WCL § 13-g is silent as to retroactivity, and Defendant does not claim otherwise.  *See* WCL § 13-g.  As to the second step, the Court finds that applying the amended statute to Plaintiff's claim would not "take[] away or impair[] [Plaintiff's] vested rights," *Calloway*, 761 F.3d at 259 n.4 (quoting N.Y. Stat. Law § 51); *see also Wheeler*, 22 F. Cas. at 767, because the 2019 amendment merely changed the procedure and form of remedies available to Plaintiff, WCL § 13-g; *see, e.g.*, *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 289 (1964) ("It is thus presumed, absent any contrary indication, that the Legislature intended 'Change in the form of remedies,' . . . to be 'applicable to proceedings thereafter instituted for the redress of wrongs already done.'" (quoting *Berkovitz v. Arbib & Houlberg*, 230 N.Y. 261, 270 (1921))); *Berkovitz*, 230 N.Y. at 270 ("Arbitration is a form of procedure whereby differences may be settled.  It is not a definition of the rights and wrongs out of which differences grow.  This statute did not attach a new obligation to sales already made.  It vindicated by a new method the obligation then existing. . . . Changes in the form of remedies are applicable to proceedings thereafter instituted for the redress of wrongs already done.  They are retrospective if viewed in relation to the wrongs.  They are prospective if viewed in relation to the means of reparation." (citations omitted)); *see also* N.Y. Stat. Law § 54(a) ("Remedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they do not impair vested rights.").

Because the WCL "is remedial in nature and should 'be construed liberally to accomplish [its] economic and humanitarian objects,'" *Anderson*, 207 N.Y.S.3d at 740 (alteration in original) (quoting *Husted*, 41 N.Y.2d at 145), and the 2019 amendments do not create new substantive rights, but rather codify a change in remedies, the Court finds that the 2019 amendments "should apply not only to causes of action accruing after its effective date but also to previously accrued

claims not yet interposed by that date," *Brothers v. Florence*, 95 N.Y.2d 290, 300 (2000); *see also Surgicore of Jersey City, LLC v. Liberty Mut. Ins. Co.*, No. 606492/2023 (N.Y. Sup. Ct. Mar. 18, 2024) ("This [c]ourt further holds that Workers' Compensation Law [§] 13-g, as amended effective January 1, 2020 is remedial and procedural in nature and applies retroactively as long as the action was commenced after January 1, 2020."); *PRC Supplies, Inc., v. Liberty Mut. Ins. Co.*, No. 612464/2023 (N.Y. Sup. Ct. Feb. 27, 2024) ("The [c]ourt finds that the [WCL § 13-g] is remedial and/or procedural in nature and applies retroactively as long as this action was commenced after January 1, 2020 . . . ."), *adhered to on reconsideration*, (N.Y. Sup. Ct. Aug. 14, 2024).  Because Plaintiff commenced this action on August 4, 2023, in the Supreme Court of New York, Nassau County, (Compl.), over two years after the 2019 amendment went into effect, *see* WCL § 13-g, the Court finds that the amended statute applies to Plaintiff's claims.

####          c.    **Primary jurisdiction doctrine**

Defendant argues that the Court lacks subject matter jurisdiction because the Board "has exclusive jurisdiction over actions involving payments to all providers, even out-of-state providers."  (Def.'s Mem. 2.)  In support, Defendant argues that the Board has specialized knowledge and expertise to adjudicate the factual issues under the WCL involved in this case.  (Def.'s Reply 4–5; *see also* Def.'s Mem. 5.)  In addition, Defendant argues that, even if the Court "does not dismiss this action, it should stay this action pending a determination by the [Board] of [Plaintiff]'s claims."  (Def.'s Reply 7.)

Plaintiff argues that the Board "does not have 'exclusive jurisdiction' because the WCL's administrative processes for unpaid or underpaid bills from medical providers did not apply to [Plaintiff] prior to January 1, 2020, and it is futile for an out-of-state [medical care provider], like Plaintiff, to seek a [Board] remedy that does not exist for dates of service prior to January 1,

2020." (Pl.'s Opp'n 10–11.)  In addition, Plaintiff argues that the doctrine of primary

jurisdiction is not triggered because "[t]here is no concurrent jurisdiction between the [Board]

and the [Court] in this matter" since the Board "never had the power to permit out-of-state

[medical care provider] to request recourse through the [Board] administrative processes for

disputed out-of-state [medical care provider] bills for dates of service prior to January 1, 2020."

(*Id.* at 16; *see also id.* (arguing that "the doctrine of primary jurisdiction is not triggered" because

Plaintiff, an out-of-state medical care provider, has "no right to the [Board]'s expedited

arbitration, adjudication decision, and administrative award processes").)

  "The doctrine of primary jurisdiction 'applies where a claim is originally cognizable in

the courts, but enforcement of the claim requires, or is materially aided by, the resolution of

threshold issues, usually of a factual nature, which are placed within the special competence of

the administrative body.'"  *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 505 (2d Cir. 2022)

(quoting *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58–59 (2d Cir. 1994);

*see also S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 135–36 (2d Cir. 2010) ("The

doctrine of primary jurisdiction applies 'to claims properly cognizable in court that contain some

issue within the special competence of an administrative agency.'" (quoting *Reiter v. Cooper*,

507 U.S. 258, 268 (1993))); *Fed. Trade Comm'n v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir.

2006) ("The doctrine of primary jurisdiction allows a federal court to refer issues 'extending

beyond the "conventional expertise of judges" or "falling within the realm of administrative

discretion"' to the appropriate administrative agency for resolution in the first instance." (quoting

*Nat'l Commc'ns Ass'n v. AT&T Co.*, 46 F.3d 220, 222–23 (2d Cir. 1995))).  The doctrine is

"concerned primarily with 'promoting relationships between the courts and [the] administrative

agencies charged with particular regulatory duties,' and 'with ensuring the two do not work at

cross-purposes.'"  *Palmer*, 51 F.4th at 504–05 (alteration in original) (quoting *Ellis v. Tribune*

13

*Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006)).  The scope of the doctrine is "relatively narrow," and courts generally decline to apply the primary jurisdiction doctrine "when the issue is legal in nature and lies within the traditional realm of judicial competence."  *Id.* at 504, 507 (quoting *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988)).

"For a court to invoke the primary jurisdiction doctrine, it must determine that the agency, not the courts, should have the '*initial* decisionmaking responsibility.'"  *Palmer*, 51 F.4th at 505 (quoting *Ellis*, 443 F.3d at 81); *Schaghticoke Tribal Nation v. Kent Sch. Corp. Inc.*, 595 F. App'x 32, 34 (2d Cir. 2014) ("The primary jurisdiction doctrine is '[a] judicial doctrine whereby a court tends to favor allowing an agency an initial opportunity to decide an issue in a case in which the court and the agency have concurrent jurisdiction.'" (alteration in original) (quoting *Primary Jurisdiction Doctrine*, Black's Law Dictionary 1310 (9th ed. 2009))).  "A court's application of the primary jurisdiction doctrine thus 'does not [necessarily] deprive the court of jurisdiction.'"  *Palmer*, 51 F.4th at 505 (alteration in original) (quoting *Reiter*, 507 U.S. at 268–69).  If the court retains jurisdiction, "the case is 'stayed so as to give the plaintiff a reasonable opportunity within which to apply to the [agency] for a ruling.'"  *Id.* (alteration in original) (first quoting *Mitchell Coal & Coke Co. v. Pa. R.R. Co.*, 230 U.S. 247, 267 (1913); and then citing *Reiter*, 507 U.S. at 268 n.3); *Flacke v. Onondaga Landfill Sys., Inc.*, 69 N.Y.2d 355, 362 (1987) ("The doctrine of primary jurisdiction provides that '[w]here the courts and an administrative agency have concurrent jurisdiction over a dispute involving issues "beyond the conventional experience of judges," . . . the court will "stay its hand until the agency has applied its expertise to the salient questions."'" (alterations in original) (quoting *Engelhardt v. Consol. Rail Corp.*, 756 F.2d 1368, 1369 (2d Cir. 1985))).  Otherwise, a court "may choose to dismiss the case without prejudice — but only 'if the parties would not be unfairly disadvantaged.'"  *Palmer*, 51 F.4th at 505 (quoting *Reiter*, 507 U.S. at 268); *see also, e.g.*, *Mathirampuzha v. Potter*, 548

F.3d 70, 84–85 (2d Cir. 2008) (vacating the district court's dismissal and remanding with instructions to stay the proceedings pending a final determination by the administrative agency because dismissing the case presented "a significant danger of unfair disadvantage . . . inasmuch as the plaintiff's claim [was] subject to a statute of limitations").

There is "[n]o fixed formula" for applying the doctrine. *Palmer*, 51 F.4th at 506 (alteration in original) (quoting *Ellis*, 443 F.3d at 82); *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)) (same). However, the Second Circuit generally considers four factors, known as the *Ellis* factors, in determining whether the doctrine should be applied:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Palmer*, 51 F.4th at 506 (quoting *Ellis*, 443 F.3d at 82–83); *Schiller*, 449 F.3d at 295. "In addition to considering the *Ellis* factors, '[a court] must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings.'" *White v. Beech-Nut Nutrition Co.*, No. 23-220, 2024 WL 194699, at *1 (2d Cir. Jan. 18, 2024) (quoting *Palmer*, 51 F.4th at 511). The Court considers each factor below.

### i.   Technical expertise of agency versus conventional experience of judges

Defendant argues that the Board "has specialized knowledge and expertise necessary for addressing numerous matters at issue," including (1) "whether [Defendant] is the Workers' Compensation insurer for the claims at issue;" (2) "whether the claims are compensable under the WCL;" (3) "if so, application of the WCL's fee schedule to the claims alleged in the . . . Complaint and/or determination of the reasonable value of those services under the WCL;" and (4) "whether

some limitations period applies to [P]laintiff's claim for services."[9]  (Def.'s Reply 4–5; *see also*

Def.'s Mem. 5 (listing similar issues).)

Plaintiff's claims for reimbursement of bills paid for medical services rendered pursuant to

the WCL or under a quasi-contract theory are within the conventional experience of judges.  *See,*

*e.g.*, *Palmer*, 51 F.4th at 507 (listing statutory interpretation and issues of contract interpretation as

within "the daily fare of federal judges" (first quoting *Schiller*, 449 F.3d at 295; and then citing

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996))).

However, Defendant raises various issues that are best suited for the technical expertise of the

Board, including "whether [Defendant] is the Workers' Compensation insurer for the claims at

issue," and "whether the claims are compensable under the WCL."[10]  (Def.'s Reply 4; *see also*

---

[9]  Plaintiff does not respond directly to Defendant's argument regarding the Board's specialized knowledge and expertise, (*see generally* Pl.'s Opp'n), but Plaintiff does quote a New York Supreme Court, Queens County case that addresses the issue, (*id.* at 16–17 (quoting *21st Century Pharm. v. Travelers Indem. Co.*, No. 716328/2021, 2023 N.Y. Misc. LEXIS 21259, at *4 (N.Y. Sup. Ct. Apr. 10, 2023))).  In *21st Century Pharmacy*, the court stated:

> Although [the] defendant points to the broad statutory powers of the [B]oard to carry out and enforce the Workers[] Compensation Law, the only issue in this action is whether [the] defendant timely paid the bills for the medications [the] plaintiff provided to the patients pursuant to the fee schedule or timely furnished an explanation for not paying.  Since the expertise of the [B]oard has not been shown necessary to determine the issues in the action, the court may exercise jurisdiction over the action.

*21st Century Pharm.*, 2023 N.Y. Misc. LEXIS 21259, at *4 (citations omitted).  However, whether Defendant timely paid the bills for the medical care Plaintiff provided to the Injured Workers is not the only issue in this case, distinguishing it from *21st Century Pharmacy*.  (*See* Def.'s Reply 4–5 (arguing that there are various factual issues for the Board to decide, including "whether [Defendant] is the Workers' Compensation insurer for the claims at issue").)

[10]  The Court notes that each of the Injured Workers filed a claim for compensation with the Board prior to the commencement of this action.  (*See* Injured Workers Spreadsheet.) Pursuant to the WCL:

> At any time after the expiration of the first seven days of disability on the part of an injured employee, or at any time after the employee's death, a claim for compensation may be presented to the

Def.'s Mem. 5); WCL § 11 ("The liability of an employer . . . shall be exclusive and in place of any

other liability whatsoever, to such employee . . . ."); *Cunningham v. New York*, 60 N.Y.2d 248, 251

(1983) ("Section 11 of the [WCL] provides that the liability of an employer under that law shall be

exclusive and in place of any other liability to the employee or his dependents for the injury or

death of the employee."); *State Farm Mut. Auto. Ins. Co. v. Amtrust N.A.*, 205 N.Y.S.3d 135, 136

(App. Div. 2024) ("[W]here the availability of workmen's compensation hinges upon the resolution

of questions of fact or upon mixed questions of fact and law, the plaintiff may not choose the courts

as the forum for the resolution of such questions." (first quoting *O'Rourke v. Long*, 41 N.Y.2d 219,

228 (1976); and then citing *Liss v. Trans Auto Sys., Inc.*, 68 N.Y.2d 15, 20 (1986))); *Narro v. MMC

Holding of Brooklyn, Inc.*, 992 N.Y.S.2d 561, 563 (App. Div. 2014) ("Where the issue of the

applicability of the Workers' Compensation Law is in dispute, and a plaintiff fails to litigate that

issue before the Board, a court should not express an opinion as to the availability of compensation,

but should refer the matter to the Board because the Board's disposition of the plaintiff's

compensation claim is a jurisdictional predicate to the civil action." (collecting cases)); *see also

Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 726 (2d Cir. 1994) ("The district court did not abuse its

discretion by deferring to the Board, especially because what constitutes an occupational disease or

---

employer or to the chair.  The [B]oard shall have full power and
authority to determine all questions in relation to the payment of
claims presented to it for compensation under the provisions of this
chapter.  The chair or [B]oard shall make or cause to be made such
investigation as it deems necessary, and upon application of either
party, shall order a hearing, and within thirty days after a claim for
compensation is submitted under this section, or such hearing
closed, shall make or deny an award, determining such claim for
compensation, and file the same in the office of the chair.

WCL § 20.  Given the amount of time that has elapsed since the Injured Workers filed their
claims and the statute's requirement that claims be resolved within thirty days after filing or a
hearing is held, *see id.*, it appears that the Board should have already determined the relevant
factual issues, including whether the Injured Workers' claims are compensable under the WCL.
However, neither party has informed the Court of the status of the underlying claims.

an accidental injury under the [WCL] is a fine distinction best left to the expertise of the Board."
(citations omitted)); *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 353 (W.D.N.Y. 2018) ("[T]he
questions presented here plainly involve matters that are not within the conventional experience of
judges, and which involve technical or policy considerations within the agency's particular field of
expertise.  While the [c]ourt has jurisdiction over [the] plaintiff's claims, the [agency] has
considerably more expertise in the underlying factual matters.").

    ii.   **Discretion of the Board**

Under the second *Ellis* factor, a court asks "whether an agency's review of the facts 'will be a
*material* aid' to the court ultimately charged with applying" the facts to the law.  *Palmer*, 51 F.4th at
508 (quoting *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002)).  "To determine
whether an agency's expertise would materially aid the court, [a court should] assess whether a
given issue is 'legal in nature,' or 'of a factual nature.'"  *Id.* (first quoting *Goya Foods*, 846 F.2d at
851–52; and then quoting *Golden Hill Paugussett Tribe of Indians*, 39 F.3d at 58–59).  "When a
court is asked to resolve a factual issue the subject-matter of which falls within an agency's purview,
. . . [t]he issue is . . . whether the agency's expertise would materially assist the court in resolving
difficult factual questions to determine whether specified legal standards have been violated."  *Id.*

It is undisputed that factual questions are within the discretion of the Board.  *See, e.g.*, 12
N.Y. Comp. Codes R. & Regs. § 300.5(a) ("In controverted claims the [WCLJ] shall make a
reasoned decision upon the contested points."); WCL § 20 ("The decision of the [B]oard shall be
final as to all questions of fact, and except as provided in [WCL § 23], as to all questions of
law.").  Moreover, the Court finds that the Board's expertise "would materially assist the court in
resolving difficult factual questions."  *Palmer*, 51 F.4th at 508; *see, e.g.*, *Amtrust*, 205 N.Y.S.3d
at 136 ("[T]he Workers' Compensation Board has primary jurisdiction over the coverage issues
raised, including the extent to which the medical expenses incurred by the plaintiff's subrogors

are casually related to the subject accident and compensable under the Workers' Compensation Law."); *Monteiro v. Rasraj Foods & Catering, Inc.*, 912 N.Y.S.2d 437, 437 (App. Div. 2010) (noting that when "the existence of an employer-employee relationship presents a question of fact, that question is properly resolved in the first instance by the Board, as is the question of whether the alleged injury was sustained in the course of employment").

### iii.   Risk of inconsistent rulings

Under the third *Ellis* factor, courts are more likely to defer to an agency if there is "a substantial danger of inconsistent rulings." *Ellis*, 443 F.3d at 83. "Courts should be especially solicitous in deferring to agencies that are simultaneously contemplating the same issues." *Id.* at 88. Although "conflicting results in separate cases are a common concern, conflicts arising within the *same* case" — at the agency and judicial levels — "are especially problematic." *Id.*

Neither party asserts that there is a pending proceeding between these parties before the Board. *See Manuel v. Pepsi-Cola Co.*, No. 17-CV-7955, 2018 WL 2269247, at *7 (S.D.N.Y. May 17, 2018) ("[W]hen the 'agency is *not* simultaneously contemplating the same issue . . . this factor weighs against applying the primary jurisdiction doctrine.'" (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 477 (S.D.N.Y. 2014))). However, because neither party has informed the Court of the status of the Injured Workers' claims before the Board, it is unclear whether there is "substantial danger of inconsistent rulings" between the Court and the Board as to the specific issues between the parties in this action, *cf. Ellis*, 443 F.3d at 87, such as "whether the claims are compensable under the WCL," (Def.'s Reply 4).

### iv.   Prior applications to the Board

The fourth *Ellis* factor "seeks to accomplish one of the doctrine's central aims: 'to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes.'" *Palmer*, 51 F.4th at 511 (quoting *Fulton Cogeneration*, 84 F.3d at 97). "If prior

application to the agency is *present*, this factor provides support for the conclusion that the doctrine of primary jurisdiction is appropriate." *Id.* (first quoting *Ellis*, 443 F.3d at 89; and then citing *Golden Hill Paugussett Tribe of Indians*, 39 F.3d at 60).  Therefore, "if prior application to the agency is *absent*, this factor may weigh against referral of the matter to the agency." *Id.* (first quoting *Ellis*, 443 F.3d at 89; and then citing *Schiller*, 449 F.3d at 295).

The parties have not asserted that they made any prior application to the Board, and, as discussed above, there is no pending proceeding before the Board as between these parties.  *See Schiller*, 449 F.3d at 295 (noting the fact that the party bringing the action had not made a prior application to the agency weighed against applying the doctrine).  However, given the retroactivity of the 2019 amendment, the uncertainty of the disposition of the Injured Workers' claims before the Board, and the fact that the Board "is poised to take up the specific questions before [the Court]," there is a "concern that [the] [C]ourt will resolve Plaintiff['s] claims and fashion a remedy in a way that would work at a 'cross-purpose' with [the Board]'s actions." *Palmer*, 51 F.4th at 511.

### v.   Balancing the advantages and the costs

"In deciding whether to apply the primary jurisdiction doctrine, [a court] must also 'balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings.'" *Id.* (quoting *Ellis*, 443 F.3d at 83).  Courts often find that the costs outweigh the advantages of applying the doctrine when deferring to an agency would "unnecessarily prolong [a] case," especially for several years.  *See, e.g.*, *White*, 2024 WL 194699, at *2 (quoting *Seneca Nation of Indians v. New York*, 988 F.3d 618, 629 (2d Cir. 2021)); *Nat'l Commc'ns Ass'n*, 46 F.3d at 225 ("[A] potential delay of even two years more than outweighs any benefit that might be achieved by having the [agency] resolve this relatively simple factual dispute.").

The Court finds that the advantages of applying the doctrine and deferring to the Board's expertise outweigh the potential cost of delay in this action.  The Court has no basis to conclude, and the parties do not suggest, that requiring Plaintiff to file its claim before the Board would cause undue delay in this action as the Board routinely handles matters within a few months.[11]  *See, e.g.*, New York State Workers' Compensation Board 2023 Annual Report 8 (2023) ("When a claim is disputed, the claim is subject to the statutory expedited hearing process, which seeks to resolve the claim within 90 days.  An important step in that process is scheduling pre-hearing conferences, ideally within 30 days.  In 2023, the Board's median time frame for scheduling pre-hearing conferences for controverted claims was within 27 days of receiving a complete claim, a day faster than in 2022."); *cf. White*, 2024 WL 194699, at *2 (concluding that "the potential costs resulting from these indefinite delays outweigh any possible benefits that could be obtained from deferring to the agency"); *Palmer*, 51 F.4th at 511 ("[A]bstention in favor of action by [the agency] has the potential to delay this litigation, without any likelihood of countervailing advantages.").

In weighing the four *Ellis* factors and balancing the advantages and costs of applying the primary jurisdiction doctrine, the Court finds that a stay is warranted and that the Board "should have the '*initial* decisionmaking responsibility'" in this action.  *See Palmer*, 51 F.4th at 505 (quoting *Ellis*, 443 F.3d at 81).  Accordingly, the Court stays the action and refers the matter to the Board to determine or clarify the factual issues raised by Defendant in this action: (1) whether the Injured Workers' claims are compensable under the WCL; (2) whether Defendant is the workers' compensation insurer for the Injured Workers' claims; and (3) if Defendant is the

---

[11]  Even if Plaintiff is correct that it "has no [Board] process available to pursue overdue payment from the responsible party for the bills at issue because unpaid or underpaid bills for medical services rendered by out-of-state [medical care providers] are not eligible for an arbitration award[], [a]dministrative [a]wards, or an [a]djudication [d]ecision if the dates of service are prior to 01/01/2020," (Pl.'s Opp'n 5), the Court has no basis to conclude that the Board's denial of jurisdiction as to Plaintiff's claim would cause undue delay in this case.

workers' compensation insurer, the applicable fee schedule for, or the reasonable value of, the medical services rendered to the Injured Workers by Plaintiff.[12]  *Heilweil*, 32 F.3d at 726; *Liss*, 68 N.Y.2d at 20; *see also Amtrust*, 205 N.Y.S.3d at 136; *Narro*, 992 N.Y.S.2d at 563; *PRC Supplies*, No. 612464/2023 ("Given that the Worker's Compensation Board has jurisdiction over the issues, following the doctrine of primary jurisdiction, the Worker's Compensation Board should exercise its expertise over whether the medical equipment was necessary and relates to a work-related injury and what the reasonable value of the medical equipment that is reimbursable by the Worker's Compensation [i]nsurer.").

## III.  Conclusion

For the reasons discussed above, the Court grants in part and denies in part Defendant's motion.  The Court denies Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction, but grants Defendant's motion to stay the action pending the New York Workers' Compensation Board's adjudication or clarification of the factual issues raised in this action.  The parties are directed to provide monthly status updates to the Court.

Dated: August 15, 2024
　　　　Brooklyn, New York

SO ORDERED:


＿＿＿＿＿＿s/ MKB＿＿＿＿＿＿
MARGO K. BRODIE
United States District Judge

---

[12]  Because the Court stays this action and refers the matter to the Board, the Court declines to address Defendant's argument that Plaintiff failed to exhaust its administrative remedies.  (Def.'s Reply 7; *see also* Def.'s Mem. 2–5.)